FILED
LODGED
RECEIVED
OCT 31 2006
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                                    DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR06-5661RBL |
| Plaintiff, | |
| v. | PLEA AGREEMENT |
| ILIAS DIMITRIOU NTAIS, | |
| Defendant. | |

The United States of America, by and through John McKay, United States Attorney for the Western District of Washington, and Carl Blackstone and James D. Oesterle, Assistant United States Attorneys for said District, Defendant Ilias Dimitriou Ntais, and his attorney, Robert Mahler, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c):

1. **Waiver of Indictment.** Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charge brought by the United States Attorney in an Information.

2. **The Charge.** Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enter a plea of guilty to knowingly failing to maintain an Oil Record Book in which all disposals of oil residue and all overboard discharges were fully recorded, in violation of Title 33, United States Code, Section 1908(a) and Title 33, Code of Federal Regulations, Sections 151.25, as

PLEA AGREEMENT - 1
ILIAS DIMITRIO NTAIS

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

charged in Count 1 of the Information.

3. **Elements of the Offense.** To establish liability for the charged offense of violating the Act to Prevent Pollution from Ships as charged in Count 1 of the Information, in violation of Title 33, United States Code, Sections 1308(a) and Title 33, Code of Federal Regulations, Sections 151.25, the United States must prove that the Defendant, as the person in charge of the oil transfer operations on board the M/V IRIKA, knowingly failed to maintain an Oil Record Book in which all disposals of oil residue and all overboard discharges were fully recorded.

4. **The Penalties.** Defendant understands that the statutory penalties for the offense of failing to maintain an accurate Oil Record Book in violation of Title 33, United States Code, Section 1908(a) and Title 33, Code of Federal Regulations, Section 151.25, as charged in Count 1 of the Information are as follows: a term of imprisonment of not more than six (6) years, a period of supervision following release from prison not to exceed three (3) years, a fine of up to Two Hundred Fifty Thousand Dollars ($250,000.00), a period of probation of up to five (5) years, and a One Hundred Dollar ($100.00) special assessment. Defendant agrees that the special assessment shall be paid at or before the time of sentencing.

Defendant understands that supervised release is a period of time following imprisonment during which he will be subject to certain restrictions and requirements. Defendant further understands that if supervised release is imposed and he violates one or more of its conditions, he could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that in addition to any term of imprisonment and/or fine that is imposed, the Court may order him to pay restitution to any victim of the offense, as required by law.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs or restitution, is due and payable immediately, and further

PLEA AGREEMENT - 2
ILIAS DIMITRIO NTAIS

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

5. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, he knowingly and voluntarily waives the following rights:

    a. The right to plead not guilty and to persist in a plea of not guilty;

    b. The right to a speedy and public trial before a jury of his peers;

    c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

    d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

    e. The right to confront and cross-examine witnesses against Defendant at trial;

    f. The right to compel or subpoena witnesses to appear on his behalf at trial;

    g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

    h. The right to appeal a finding of guilt or any pretrial rulings.

6. **United States Sentencing Guidelines.** Defendant understands and acknowledges that, at sentencing, the Court must consider the sentencing range calculated under the United States Sentencing Guidelines, together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense(s); (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective

PLEA AGREEMENT - 3
ILIAS DIMITRIO NTAIS

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

    a. The Court will determine his applicable Sentencing Guidelines range at the time of sentencing;

    b. After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

    c. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

    d. Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

7. <u>Sentencing Recommendation</u>. The United States agrees that if the Court determines that the total offense level under the United States Sentencing Guidelines is 0 to 6 months of imprisonment, the United States will recommend a term of imprisonment of no greater than three months. Alternatively, if the Court determines that the total offense level under the United States Sentencing Guidelines results in a higher range of imprisonment, the United States will recommend a term of imprisonment not to exceed 6 months of imprisonment. In either instance, however, the Defendant may recommend a lesser sentence, including probation and no period of imprisonment. Defendant understands that at the time of sentencing the Court is not bound by the recommendation of the parties and may impose any sentence authorized by law.

8. <u>Ultimate Sentence</u>. Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

9. <u>Statement of Facts</u>. The parties agree on the following facts. Defendant

PLEA AGREEMENT - 4
ILIAS DIMITRIO NTAIS

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

admits he is guilty of the charged offenses.

## Introduction

At all relevant times, Defendant Ilias Dimitriou Ntais served as Chief Engineer on board the Motor Vessel ("M/V") IRIKA, a Panamanian flagged marine vessel owned by Irika Maritime S.A. and operated by Irika Shipping S.A. The M/V IRIKA was an approximately 30,046 ton ocean going bulk carrier measuring 623 feet in length.

The M/V IRIKA had an engine department headed by the Defendant. As Chief Engineer, Defendant had overall responsibility for engine room operations including supervising daily operations, formulating and implementing engine room procedures, and verifying engine room systems were functioning properly. He reported directly to the Captain and to shore-based managers. The Defendant was assisted by a Second Engineer and a Third Engineer who in turn were assisted by laborers referred to in the maritime industry as "wipers" and "cadets," all of whom were employees and agents of Irika Shipping S.A.

The operation of large marine vessels like the M/V IRIKA generates large quantities of oily sludge. Oily sludge is generated during the process of purifying or preparing fuel oil, lubricating oil, and other petroleum products for use in the engines. Oily sludge generated by these processes must be stored on board the vessel in sludge tanks. The oily sludge can be burned on board the vessel through use of an incinerator or auxiliary boiler or offloaded onto barges or shore-side facilities for disposal. The M/V IRIKA was equipped with an incinerator capable of burning oily sludge.

## Legal Framework

The United States is part of an international regime that regulates discharges of oil from vessels at sea: the International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978 (the "MARPOL Protocol"). The MARPOL Protocol is embodied in numerous agreements that the United States has ratified and implemented into law by the Act to Prevent Pollution from Ships (APPS), Title 33, United States Code, Sections 1901, et seq. APPS makes it a crime for any person to
PLEA AGREEMENT - 5
ILIAS DIMITRIO NTAIS
UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

knowingly violate the MARPOL Protocol, APPS, or regulations promulgated under APPS. These regulations apply to all commercial vessels operating in United States waters or while at a port or terminal under the jurisdiction of the United States, including vessels operating under the authority of a country other than the United States. APPS regulations require that vessels of more than 400 gross tons, such as the M/V IRIKA, maintain a document known as the Oil Record Book. Vessel personnel must use the Oil Record Book to fully and accurately record transfers of oil, disposals of sludge and waste oil, and overboard discharges of oil contaminated water that accumulated in machinery spaces. Title 33, Code of Federal Regulations, Section 151.25(d). Ship personnel must also fully and accurately record any emergency, accidental, or other exceptional discharges of oil. Title 33, Code of Federal Regulations, Section 151.25(g). In addition, the Oil Record Book must be maintained on board the vessel for not less than three years, and be readily available for inspection at all reasonable times. Title 33, Code of Federal Regulations, Section 151.25(k).

"Flag states" (i.e., countries that register marine vessels) certify a vessel's compliance with international laws. "Port states" (i.e., countries visited by marine vessels), such as the United States, inspect vessels to assure compliance with the law within their ports and waters. The United States Coast Guard, an agency of the United States Department of Homeland Security, is charged with enforcing the laws of the United States and is empowered under Title 14, United States Code, Section 89(a) to board vessels and conduct inspections and investigations of potential violations and to determine compliance with MARPOL Protocol, APPS, and implementing regulations.

The Coast Guard conducts Port State Control Examinations which involve boarding a vessel and conducting inspections and investigations of potential violations. Failure to comply with international standards, including MARPOL, can provide the basis of an order refusing to allow a vessel to enter port, or to prohibit the vessel from leaving port without remedial action and assuring authorities the vessel does not present an unreasonable threat to the marine environment. Title 33, Code of Federal Regulations,

PLEA AGREEMENT - 6
ILIAS DIMITRIO NTAIS

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Sections 151.07(b) and 151.25(b). Coast Guard personnel rely on crew member statements and vessel documents when conducting inspections and investigations. They are specifically authorized to examine a vessel's Oil Record Book to determine, among other things, whether the vessel has operable pollution prevention equipment, whether it poses any danger to United States ports and waters, and whether the vessel discharged any oil or oily mixtures in violation of MARPOL, APPS, or any other applicable federal regulations. Title 33, Code of Federal Regulations, Sections 151.23(a)(3) and (c).

### Vancouver, Washington Boarding

On or about October 5, 2006, the M/V IRIKA berthed at the Port of Vancouver in Washington State and was boarded by Coast Guard personnel to conduct a MARPOL inspection. Inspectors were presented with and reviewed various records, including the Oil Record Book. No discernable discrepancies were noted in the Oil Record Book. During a follow-up boarding on October 6, 2006, Coast Guard inspectors discovered behind the sewage tank a flexible hose containing oily waste.

Discovery of the oil contaminated flexible hose led inspectors to examine potential uses for the hose. Flanges on either end of the hose matched flanges on the discharge side of the sludge pump and the overboard discharge valve through which treated water from the oil water separator was discharged into the sea. The inspectors removed short segments of fixed piping from both the sludge pump and the overboard discharge valve and determined that the flexible hose was the correct length. In addition, upon removal of the fixed pipe segment from the overboard discharge valve, inspectors discovered an oily sludge residue that should not have been present had the overboard discharge valve been used exclusively to discharge treated bilge water from the oil water separator. Finally, inspectors discovered that the area surrounding the overboard discharge valve, including the valve itself, had been freshly painted in an apparent attempt to conceal the fact that the fixed pipe segment had been removed to facilitate connection of the flexible hose.

Between on or about October 6, 2006 and October 20, 2006, several members of M/V IRIKA engine room crew provided information to Coast Guard investigators and

PLEA AGREEMENT - 7
ILIAS DIMITRIO NTAIS

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

other law enforcement personnel confirming that the flexible hose discovered by inspectors on October 6, 2006 had been used to discharge oily sludge directly from the sludge tank through the overboard discharge valve directly into the sea. Crew members reported that the flexible hose was connected on numerous occasions over the past several months while the vessel transited between ports.

The Oil Record Book maintained on board the M/V IRIKA included numerous entries purportedly documenting use of the vessel incinerator to burn oily sludge. Discovery of the flexible hose, together with the crew members admission that the hose was used to discharge oily sludge directly to the sea, were inconsistent with the Oil Record Book entries. Upon further questioning by law enforcement personnel, crew members stated that the incinerator on board the M/V IRIKA was not used to burn oily sludge. Crew members further stated that Defendant Ilias Dimitrio Ntais made all of the Oil Record Book entries that purportedly documented use of the incinerator to burn oily sludge.

The Oil Record Book presented to Coast Guard inspectors on October 5, 2006 during the course of their MARPOL inspection did not fully and accurately record disposal of oily residue and overboard discharges. It omitted any reference to direct discharges of oily sludge overboard and falsely documented use of the vessel incinerator for burning oily sludge. The Defendant knew, at the time the entries in the Oil Record Book were made, initialed, and presented, that in truth and in fact, oily sludge had not burned in the incinerator and had been discharged directly overboard. The omissions and false entries created the impression oily waste generated on board the M/V IRIKA was being managed correctly in accordance with applicable regulations

Despite the legal risks associated with falsifying the Oil Record Book, Defendant's conduct benefitted the owner and operator of the M/V IRIKA by reducing labor costs, disposal costs, and maintenance and repair costs.

10. <u>Non-Prosecution of Additional Offenses</u>. As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to

PLEA AGREEMENT - 8
ILIAS DIMITRIO NTAIS

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

prosecute Defendant for any additional offenses known to it as of the time of this Agreement that are based upon evidence in its possession at this time, or that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub.L. No. 105-119(1997).

11. <u>Acceptance of Responsibility.</u> The United States acknowledges that if Defendant qualifies for an acceptance of responsibility adjustment pursuant to USSG § 3E1.1(a), and his total offense level should be decreased by two (2) levels because Defendant has clearly demonstrated acceptance of responsibility for his offense.

12. <u>Breach, Waiver, and Post-Plea Conduct.</u> Defendant agrees that if he breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that if he is in breach of this Plea Agreement, Defendant has waived any objection to the reinstitution of any charges in the Indictment that were previously dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Agreement, he should engage in illegal conduct, or conduct that is in violation of his conditions of release or confinement (examples of which include, but are not limited to: obstruction of justice,

PLEA AGREEMENT - 9
ILIAS DIMITRIO NTAIS

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  failure to appear for a court proceeding, criminal conduct while pending sentencing, and
2  false statements to law enforcement agents, the Pretrial Services Officer, Probation
3  Officer or Court), the United States is free under this Agreement to file additional charges
4  against Defendant or to seek a sentence that takes such conduct into consideration. Such
5  a sentence could include a sentencing enhancement under the United States Sentencing
6  Guidelines or an upward departure from the applicable sentencing guidelines range.

7  13.  <u>Voluntariness of Plea</u>. Defendant agrees that he has entered into this Plea
8  Agreement freely and voluntarily, and that no threats or promises, other than the promises
9  contained in this Plea Agreement, were made to induce Defendant to enter this plea of
10 guilty.

11 14.  <u>Statute of Limitations</u>. In the event this Agreement is not accepted by the
12 Court for any reason, or Defendant has breached any of the terms of this Plea Agreement,
13 the statute of limitations shall be deemed to have been tolled from the date of the Plea
14 Agreement to: (1) 30 days following the date of non-acceptance of the Plea Agreement
15 by the Court; or (2) 30 days following the date on which a breach of the Plea Agreement
16 by Defendant is discovered by the United States Attorney's Office.//

17 15.  <u>Completeness of Agreement</u>. The United States and Defendant
18 acknowledge that these terms constitute the entire Plea Agreement between the parties.
19 This Agreement binds only the United States Attorney's Office for the Western District of

PLEA AGREEMENT - 10
ILIAS DIMITRIO NTAIS

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 31st day of October, 2006.

_____
ILIAS DIMITRIOU NTAIS
Defendant

_____
ROBERT MAHLER
Attorney for Defendant

_____
CARL BLACKSTONE
Assistant United States Attorney

_____
JAMES D. OESTERLE
Assistant United States Attorney

PLEA AGREEMENT - 11
ILIAS DIMITRIO NTAIS

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970